Marie A. ZIMMERMANN, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.

No. 84–2326.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1985.

Decided Oct. 3, 1985.

Michael T. Garrett, Amherst, Va. (Donald G. Pendleton, Pendelton & Gamble, Amherst, Va., on brief), for appellant.

James S. Feight, Jr., Asst. Regional Atty., Philadelphia, Pa. (Beverly Dennis, III, Regional Atty., Philadelphia, Pa., John P. Alderman, U.S. Atty., Jennie L. Montgomery, Asst. U.S. Atty., Roanoke, Va., on brief), for appellee.

Before RUSSELL and PHILLIPS, Circuit Judges, and KNAPP, United States District Judge for the Southern District of West Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge.

Appellant Marie Zimmermann (claimant) challenges the final decision of the Secretary of Health and Human Services denying her mother's insurance benefits and child's insurance benefits under the Social Security Act, 42 U.S.C. §§ 402(g), 402(d) (1983), from June, 1976 until January, 1981. Finding that substantial evidence supports the Secretary's final decision denying Zimmermann benefits for the time period in question, we affirm.

I.

Claimant married Bernd Zimmermann on October 24, 1975; claimant had two minor children from her prior marriages. On June 22, 1976, less than eight months after he and claimant were married, Bernd Zimmermann, a native of Germany, died as a result of darvon poisoning aggravated by the ingestion of a large quantity of alcohol.

Within a week after Bernd was buried and before the death certificate had been completed, claimant was taken to her local Social Security office by Allie Parrish, Jr., the vice president of the funeral home that handled Bernd's interment. It is undisputed that claimant intended to apply for benefits at that time and that claimant brought with her all necessary documents except her husband's death certificate. Claimant was assisted by Mr. J.T. VanWinkle, a Social Security employee who apparently began to complete for claimant an application for benefits. Although there is some dispute as to what occurred during claimant's first visit to the Social Security office, as Mr. VanWinkle was completing claimant's application for benefits he recognized that claimant had been married to Bernd for less than nine months and advised claimant that she would not be entitled to either mother's insurance benefits or child's insurance benefits (on behalf of Bernd's stepchildren) unless Bernd's death was accidental.[1] It appears that Mr. VanWinkle thereafter advised claimant to return after she received the death certificate: claimant has admitted that no written application was filed during her first visit to the Social Security office.

After claimant received the death certificate, which stated that Bernd had committed suicide, she immediately returned to the Social Security office and again spoke with Mr. VanWinkle. Claimant avers that Mr. VanWinkle told her that it "would be a waste of [her] time" to file an application for benefits at that time because she had neither been married to Bernd for the requisite nine-month period nor was Bernd's death accidental. In a written statement, Mr. VanWinkle stated that he told claimant at that time that "she would have to get the death certificate revised to show accidental death in order to get a favorable decision on her claim."

After her second visit to the Social Security office, which also failed to yield a written application for benefits, claimant neglected to seek an amendment to Bernd's death certificate until nearly five years after Bernd had died. On July 15, 1981, claimant filed a written application for mother's insurance benefits and child's insurance benefits, and after she successfully had the death certificate amended to reflect an accidental cause of death, she was awarded benefits commencing as of January, 1981. Claimant, however, was denied benefits retroactive to June, 1976, the date of Bernd's death and of her first contacts with the Social Security office. Claimant then requested a de novo determination by an Administrative Law Judge (ALJ). The ALJ on May 17, 1983 held that claimant was entitled to benefits retroactive to the date of Bernd's death, because as a result of claimant's contacts with Mr. VanWinkle soon after Bernd's death, "it has to be assumed that [a written] application was filed or should have been filed shortly after the wage earner's death in 1976."

On its own motion, the Appeals Council reopened the ALJ's decision "because that decision contains error on the face of the evidence on which it was based." More particularly, the Appeals Council stated that the ALJ erred by assuming that claimant filed a written application as a result of her two visits to the Social Security office in 1976. The Appeals Council reaffirmed the requirement that a claimant must file a written application to become eligible for benefits[2] and stated that "there is no evidence that [claimant] filed a written appli-

1. The Social Security Act provides that a surviving spouse who has been married to the decedent wage earner for less than nine months is not entitled to mother's insurance benefits, unless the death was accidental. 42 U.S.C. §§ 416(a)(2), 416(c)(5), 416(k) (1983). In addition, a parent cannot recover child's insurance benefits on behalf of the decedent's stepchildren if the stepchildren's relationship with the decedent lasted for less than nine months, again unless the decedent's death was accidental. 42

U.S.C. §§ 416(e)(2), 416(k). Death from natural causes is not considered to be accidental for Social Security purposes.

2. See generally 20 C.F.R. § 404.603 (1985). A written application is a prerequisite to entitlement to mother's insurance benefits and child's insurance benefits. 42 U.S.C. §§ 402(g)(1)(D), 402(d)(1)(A).

cation for benefits until July 15, 1981." Accordingly, the Appeals Council reversed the decision of the ALJ.

On appeal, the district court affirmed the Appeals Council. The district court held first that substantial evidence, primarily claimant's own written admissions, supported the Appeals Council's finding that claimant failed to file a written application for benefits before July 15, 1981. The district court held further that Mr. VanWinkle's conduct of purportedly discouraging claimant from filing an application in 1976 did not rise to the level of affirmative misconduct sufficient to estop the government from denying claimant benefits retroactive to June, 1976. The district court reasoned that Mr. VanWinkle's advice "was correct based on the evidence available at that time," that is, that claimant would not be entitled to benefits so long as Bernd's death was not accidental. The district court, therefore, entered summary judgment in favor of the government.

## II.

■ Claimant initially contends that the Appeals Council was without authority to reopen the decision of the ALJ because "[t]he decision of the [ALJ] is supported by the evidence presented before him." Brief for Appellant at 8. The Appeals Council, however, is empowered to reopen, within four years of the date of the notice of the initial determination, any determination if "good cause" exists. 20 C.F.R. § 404.-988(b) (1985). Furthermore, "good cause" to reopen exists when "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a)(3). In the case *sub judice*, the Appeals Council properly reopened the ALJ's decision because his finding that a written application "was filed or should have been filed" in 1976 is clearly errone-

ous: there is no evidence in the record that claimant filed a written application in 1976. Claimant implicitly recognizes and we cannot ignore that a written application is a prerequisite to the receipt of the benefits she seeks. *See supra* note 2.

■ Claimant next contends that the government should be estopped from asserting that she failed to file an application for benefits in 1976 because Mr. VanWinkle's conduct effectively prevented her from filing an application. Claimant maintains that Mr. VanWinkle's statement that it "would be a waste of [her] time" to file an application because the death certificate indicated that Bernd had committed suicide amounted to "affirmative misconduct" sufficient to estop the government from denying her retroactive benefits.

Assuming without deciding that the "affirmative misconduct" of government employees may estop the government in an appropriate case,[3] Mr. VanWinkle's actions in the instant case do not amount to affirmative misconduct. In fact, Mr. VanWinkle gave impeccable advice to claimant: since she had not been married to Bernd for at least nine months she was not entitled to benefits unless his death was accidental. Once the death certificate was produced, it became readily apparent that claimant was not entitled to benefits until and unless she was successful in amending the death certificate. Her failure to amend the death certificate until more than five years had elapsed cannot convert Mr. VanWinkle's perfect advice into affirmative misconduct sufficient to estop the government. Furthermore, Mr. VanWinkle's conduct was certainly less egregious than the conduct held not to be affirmative misconduct in *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In *Hansen*, a Social Security employee erroneously told a claimant that she was not entitled to receive mother's insurance benefits. As a

**3.** *See Heckler v. Community Health Services*, 467 U.S. 51, ——, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42, 52 (1984); *INS v. Miranda*, 459 U.S. 14, 18–19, 103 S.Ct. 281, 282–283, 74 L.Ed.2d 12

(1982); *Schweiker v. Hansen*, 450 U.S. 785, 788, 101 S.Ct. 1468, 1470, 67 L.Ed.2d 685 (1981); *INS v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973).

result, the claimant failed to file a written application for benefits. The Court stated that the employee's conduct " 'fal[l][s] far short' of conduct which would raise a serious question whether [the government] is estopped from insisting upon compliance with the valid regulation." *Id.* at 790, 101 S.Ct. at 1472 (quoting *Montana v. Kennedy*, 366 U.S. 308, 314, 81 S.Ct. 1336, 1340, 6 L.Ed.2d 313 (1961)). In light of the Supreme Court's decision in *Hansen*, the faultless advice given claimant by Mr. Van-Winkle certainly does not rise to the level of affirmative misconduct sufficient to estop the government from asserting that claimant is not entitled to benefits retroactive to June, 1976, because a written application was not filed in 1976.

Accordingly, the decision of the district court is

AFFIRMED.